

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed January 26, 2023**

_____
**United States Bankruptcy Judge**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **PAULA SUE WENSTROM** | § | |
| | § | **Case No. 21-31978-MVL-11** |
| Debtor. | § | |
| | § | |

### MEMORANDUM OPINION AND ORDER GRANTING U.S. BANK'S
### MOTION FOR SUMMARY JUDGMENT AND DENYING
### <u>DEBTOR'S MOTION FOR SUMMARY JUDGMENT</u>

Before the Court[1] are the dueling motions for summary judgment submitted by Creditor

U.S. Bank, N.A. ("**U.S. Bank**") [ECF No. 98][2] and Debtor Paula Sue Wenstrom (the "**Debtor**")

[ECF No. 99] (together, the "**Parties**"). U.S. Bank asks the Court to overrule the Debtor's

Amended Objection to Claim of U.S. Bank National Association (Claim No. 5) (the "**Amended**

---

[1] All capitalized references to the Court (the "**Court**") are made with respect to the United States Bankruptcy Court for the Northern District of Texas, Dallas Division.
[2] All ECF No. references are to the docket maintained by the Bankruptcy Clerk in Bankruptcy Proceeding No. 21-31978, unless otherwise indicated.

**Objection to Claim**") [ECF No. 91]. In turn, the Debtor seeks a determination that U.S. Bank's Claim No. 5-1 ("**Claim No. 5-1**") should be disallowed in full.[3] Having considered the evidence in support of and in opposition to both motions, the Court hereby grants U.S. Bank's Motion for Summary Judgment and in turn denies the Debtor's Motion for Summary Judgment.

## I.   JURISDICTION.

Bankruptcy subject matter jurisdiction exists in this proceeding pursuant to 28 U.S.C. § 1334. This is a statutory core proceeding, pursuant to 28 U.S.C. §157(b); thus, the Court has statutory authority to enter a final order. Moreover, the Debtor and U.S. Bank have consented to this Court's authority to enter final orders in this proceeding in accordance with Federal Rule of Bankruptcy Procedure 7001.[4]

## II.   UNDISPUTED FACTS.

On September 19, 2003, National City Mortgage Company ("**National**") made a loan (the "**Loan**") to the Debtor and her husband at the time, Nicole H. McKenzie ("**McKenzie**"), for the property located at 8923 Devonshire Drive, Dallas, TX 75209 (the "**Property**").[5] The Loan was evidenced by a note (the "**Note**") executed by the Debtor and McKenzie in favor of National in the original principal amount of $1,000,000.00 and a deed of trust (the "**DOT**"), pursuant to which the Debtor and McKenzie granted National a lien on and security in the Property.[6] The Loan was transferred to Structured Asset Mortgage Investments, II Inc., Prime Mortgage Trust Certificates, Series 2007-1 (the "**Trust**") on February 20, 2007.[7] U.S. Bank is the trustee of the Trust and PNC Bank N.A. ("**PNC**") is the servicer of the Loan for the Trust.[8]

---

[3] Claim No. 5-1, filed January 10, 2022.
[4] ECF No. 94.
[5] ECF No. 98-1, p. 2, ¶ 10; *see also* ECF No. 100-1, pp. 17–19.
[6] *Id.*; *see also* ECF No. 100-1, pp. 23–38.
[7] ECF No. 98-1, p. 3, ¶ 15; ECF No. 100-1, pp. 55–57.
[8] *Id.*

On March 4, 2010, PNC sent the Debtor a Notice of Acceleration (the "**2010 Acceleration**") accelerating the indebtedness due on the Note.[9] On April 26, 2010, the Debtor and McKenzie executed a Loan Modification Agreement with PNC (the "**2010 LMA**").[10] On September 26, 2014, U.S. Bank sent the Debtor and McKenzie a subsequent Notice of Acceleration (the "**2014 Acceleration**").[11] The Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code (the "**2014 Bankruptcy**") in this Court on November 3, 2014.[12]

On May 22, 2015, the Court entered an order converting the 2014 Bankruptcy from Chapter 13 to Chapter 11.[13] On May 23, 2017, the Court entered an order confirming the Debtor's *Second Amended Plan of Reorganization, As Modified* (the "**Chapter 11 Plan**").[14] Under the Chapter 11 Plan, the Debtor was required to: (1) begin making all regular monthly payments on the Loan immediately after confirmation and (2) make an immediate $50,000 payment toward the sum of the arrearage and repay the remaining balance of the sum over 60 months.[15] On June 1, 2017, the Debtor made a $50,000.00 payment to PNC on the Loan as directed by the Chapter 11 Plan.[16] The Debtor did not make, nor did U.S. Bank or PNC receive, any other payments on the Loan in conjunction with the terms of the Debtor's Chapter 11 Plan.[17] On December 21, 2017, the Court entered its *Final Decree Closing Case*, closing the 2014 Bankruptcy.[18]

On August 13, 2018, PNC sent the Debtor and McKenzie another notice of acceleration on the Loan.[19] On September 3, 2018, the Debtor filed another voluntary petition under Chapter 13

---

[9] ECF No. 98-1, p. 3, ¶ 15; ECF No. 98-4; *see also* ECF No. 100-1, p. 60.
[10] ECF No. 98-4.
[11] ECF No. 98-7; ECF No. 100-3, pp. 24–25.
[12] *See* ECF No. 100-3, p. 271; *see also* Bankruptcy Case No. 14-35340-bjh, ECF No. 1.
[13] ECF No. 100-3, p. 276; *see also* Bankruptcy Case No. 14-35340-bjh, ECF No. 56.
[14] ECF No. 100-3, p. 281*; see also* Bankruptcy Case No. 14-35340-bjh, ECF No. 130.
[15] ECF No. 100-3, pp. 99–118; *see also* Bankruptcy Case No. 14-35340-bjh, ECF No. 130, Art. 4.1(c), p. 6.
[16] ECF No. 100-1, p. 7; ECF No. 98-5, p. 8.
[17] ECF No. 98-5, pp. 8-10; ECF No. 99-1, pp. 7–9.
[18] ECF No. 100-3, p. 282; *see also* Bankruptcy Case No. 14-35340-bjh, ECF No. 144.
[19] ECF No. 98-10, p. 3; ECF No. 99-3, p. 19.

of the Bankruptcy Code (the "**2018 Bankruptcy**") in this Court.[20] On June 27, 2019, the Court

entered an order dismissing the 2018 Bankruptcy.[21]

### III.    CURRENT PROCEDURAL POSTURE.

The Debtor filed the instant Chapter 11 bankruptcy case on November 1, 2021.[22] U.S. Bank

filed its proof of claim on January 10, 2022, stating a total amount owed of $1,888,014.68, a

prepetition arrearage amount of $991,302.07, and most recent payment amount of $19,960.78 on

or about June 9, 2019.[23] On January 20, 2022, McKenzie filed his *Motion to Dismiss Chapter 11

Case With Prejudice Pursuant to 11 U.S.C. § 1112(b) and 105(a)* (the "**Motion to Dismiss**"),

seeking dismissal of the instant case with prejudice for one year due to the Debtor's alleged bad

faith in filing.[24] The Debtor filed her *Objection to Motion to Dismiss Chapter 11 Case With

Prejudice Pursuant to 11 U.S.C. 1112(b) and 105(a)* on February 10, 2022, asking the Court to

deny the Motion to Dismiss.[25]

On March 2, 2022, the Court held a hearing on the Motion to Dismiss; counsel for the

Debtor, McKenzie, and U.S. Bank each appeared before the Court at the hearing.[26] At the hearing,

the parties announced an agreed form of order resolving the Motion to Dismiss wherein the Debtor

agreed to sell the Property and that if the bankruptcy were ever dismissed, it would be with

prejudice to a subsequent bankruptcy filing for 12 months.[27] On March 7, 2022, the Court signed

and entered the *Agreed Order on Motion to Dismiss* which encapsulated the Parties' agreement.[28]

The Debtor filed her *Motion to Sell Real Property Free and Clear of Liens, Claims and*

---

[20] *See* Bankruptcy Case No. 18-32918-hdh13, ECF No. 1.
[21] *See* Bankruptcy Case No. 18-32918-bjh, ECF No. 48.
[22] ECF No. 1.
[23] *See* Claim No. 5-1; *see also* ECF No. 98, p. 5.
[24] ECF No. 43.
[25] ECF No. 50.
[26] ECF No. 57.
[27] *Id.*
[28] ECF No. 60.

*Encumbrances* (the "**Motion to Sell**") on March 28, 2022.[29] After a hearing held on May 3, 2022,[30] the Court entered its *Order Granting Motion to Sell Property Free and Clear of Liens, Claims, and Encumbrances* (the "**Sale Order**"), approving the sale, but ordering that all remaining proceeds (the "**Sales Proceeds**") after closing costs and property taxes were to remain in an escrow account subject to further order of the Court.[31] The Sale Order also specifically ordered that the liens, claims, interests, and encumbrances were to attach to the Sales Proceeds in the order of priority they attached to the Property.[32]

On April 28, 2022, shortly before the hearing on the Motion to Sell, the Debtor filed the *Debtor's Objection to Claim of U.S. Bank National Association (Claim No. 5)* (the "**Objection to Claim**").[33] U.S. Bank filed its *Response of U.S. Bank National Association to Debtor's Objection to Claim 5-1* on May 31, 2022.[34] On June 7, 2022, the Debtor filed her *Debtor's Reply to Response of U.S. Bank National Association to Debtor's Objection to Claim No. 5-1*.[35] Also on June 7, 2022, the Debtor filed the *Debtor's Motion to Invoke Adversary Rules and For Entry of a Rule 7016 Scheduling Order*, seeking an order from the Court approving discovery on her Objection to Claim without a separate Adversary Proceeding.[36] Later that same day, this Court held a status conference wherein the Debtor and U.S. Bank agreed to conduct limited discovery on Claim No. 5-1 and the Debtor's Objection to Claim before deciding whether to proceed to a formal adversary proceeding.[37]

---

[29] ECF No. 67.
[30] ECF No. 75.
[31] ECF No. 78.
[32] *Id.* at p. 2.
[33] ECF No. 72.
[34] ECF No. 81.
[35] ECF No. 84.
[36] ECF No. 85.
[37] ECF No. 86.

On August 4, 2022, the Debtor and U.S. Bank appeared before the Court at a status conference which resulted in an agreement between the parties to proceed with regard to the Debtor's Objection to Claim in a contested matter rather than an adversary proceeding.[38] On August 18, 2022, the Court signed and entered the *Agreed Order on Debtor's Motion to Invoke Adversary Rules* which ordered that the proceedings would continue "as though they were filed in an adversary proceeding as consented to by the Parties hereto, so that the Court may enter orders in conformance with the requirements of Federal Rule of Bankruptcy Procedure 7001."[39]

On August 8, 2022, the Debtor filed her Amended Objection to Claim.[40] U.S. Bank filed its *Motion for Summary Judgment by U.S. Bank National Association on Debtor's Amended Objection to Claim No. 5-1* (the "**U.S. Bank's MSJ**") on September 9, 2022.[41] The same day, the Debtor filed the *Debtor's Motion for Summary Judgment on Objection to Claim of U.S. Bank National Association (Claim No. 5) and Brief in Support Thereof* (the "**Debtor's MSJ**").[42] On September 23, 2022, U.S. Bank filed the *U.S. Bank National Association's Response to Debtor's Motion for Summary Judgment on Objection to Claim of U.S. Bank National Association (Claim No. 5) and Brief in Support Thereof.*[43] Again the same day, the Debtor filed her *Debtor's Response in Opposition to U.S. Bank National Association's Motion for Summary Judgment.*[44] On October 7, 2022, U.S. Bank filed its *U.S. Bank National Association's Reply to Debtor's Response in Opposition to U.S. Bank National Association's Motion for Summary Judgment*[45] and the Debtor filed her *Debtor's Reply to U.S. Bank's Response to Debtor's Motion for Summary Judgment on*

---

[38] ECF No. 90.
[39] ECF No. 94. On the same day, the Court also entered the *Agreed Order for Entry of a Rule 7016 Scheduling Order* at ECF No. 95.
[40] ECF No. 91.
[41] ECF No. 98.
[42] ECF No. 99.
[43] ECF Nos. 103–04.
[44] ECF No. 105.
[45] ECF No. 110.

*Objection to Claim of U.S. Bank National Association (Claim No. 5).*[46] On November 15, 2022, the Court held a hearing on the parties' respective motions for summary judgment. After hearing oral argument on the motions, the Court took the matter under advisement.

## IV.    SUMMARY JUDGMENT STANDARD.

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.[47] In instances where both parties have moved for summary judgment, as to each party's motion, all inferences on summary judgment must be drawn in favor of the non-moving party, to the extent that if there appears to be some evidentiary support for the disputed allegations, that motion must be denied.[48]

To support or refute an assertion that a genuine factual dispute exists, the parties must cite to particular parts of the record, show that the materials cited do not establish the absence or presence of a general dispute, or show that an adverse party cannot produce, rather than simply has not produced, admissible evidence to support the fact.[49] A factual dispute is genuine, and therefore precludes summary judgment, if the evidence supporting it would allow a reasonable factfinder to return a verdict for the non-movant.[50] Finally, to prevail at summary judgment on a claim on which a party has the burden of proof at trial, the party must establish "beyond peradventure all of the essential elements of the claim or defense."[51]

---

[46] ECF No. 111.

[47] *See* FED. R. CIV. P. 56, as made applicable by FED. R. BANKR. P. 7056; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

[48] *Sambula v. Barnhart*, 285 F.Supp.2d 815, 821 (S.D. Tex. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *McAllister v. R.T.C.*, 201 F.3d 570, 574 (5th Cir. 2000)).

[49] FED. R. CIV. P. 56(c)(1).

[50] *Anderson*, 477 U.S. at 248.

[51] *Bank One, N.A. v. Prudential Ins. Co. of America*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (emphasis added) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).

## V.   <u>LEGAL ANALYSIS.</u>

In the Debtor's MSJ, the Debtor alleges primarily that U.S. Bank's lien should be voided due to the expiration of the statute of limitations imposed by TEX. CIV. PRAC. & REM. CODE 16.035(b)-(d) because (1) the notices of acceleration were deficient, (2) U.S. Bank never abandoned its 2014 Acceleration, (3) the Debtor's two prior bankruptcy cases did not function to toll the statute of limitations, and (4) the Debtor did not ratify the mortgage to extend the four year limitations period.[52] Further, the Debtor's MSJ argues that U.S. Bank is not legally entitled to enforce the Note or the DOT because the Debtor was not listed alongside McKenzie as mortgagor on an assignment of the DOT.[53] In the alternative, the Debtor asks the Court to consider an installment contract theory whereby U.S. Bank would be barred from collecting on any missed payments overdue for longer than four years.[54] In U.S. Bank's MSJ, U.S. Bank asserts that each of the Debtor's arguments fail as a matter of law because (1) the statute of limitations has not yet expired on their 2014 Acceleration, and (2) even if it had, U.S. Bank has taken multiple actions that effectively abandoned the 2014 Acceleration.[55] The Court will first address the enforceability of the Note and DOT, then turn to the statute of limitations, before finally addressing the installment contract theory.

### a.   ENFORCEABILITY OF THE NOTE AND DEED OF TRUST

The Debtor alleges that the assignment of the mortgage to U.S. Bank is invalid because it improperly refers to McKenzie as the only mortgagor of the mortgage and Note.[56] U.S. Bank argues that it is the valid holder of the Note through its servicer, PNC.[57]

---

[52] ECF No. 91, pp. 3–9.
[53] ECF No. 99, p. 18, ¶¶ 53–56.
[54] ECF No. 91, p. 10.
[55] ECF No. 98, pp. 7–26.
[56] *See* ECF No. 99, p. 18, ¶¶ 53–56; *see also* ECF No. 100-1 p. 55–57.
[57] ECF No. 104, p. 8.

1.  <u>Invalid Assignment of the Mortgage</u>

As an initial matter, the Court notes that borrowers have only very limited standing to challenge lenders' assignments of promissory notes and deeds of trust.[58] This is because an assignment is a contract "between the assignor of a right and an assignee, who receives the authority to assert that right."[59] Generally, only parties in privity of contract or third party beneficiaries thereof are entitled to enforce or challenge a contract.[60] In the mortgage context, courts in Texas have repeatedly held that "borrowers do not have standing to challenge the assignments of their mortgages because they are not parties to those assignments."[61]

An exception to this general rule applies, however, when an obligor claims that an assignment to which it is not a party is void *ab initio*, rather than simply voidable.[62] A voidable assignment occurs when one or more of the parties to the assignment has the power, by the manifestation of an election to do so, to avoid the legal relationship created by the contract.[63] For instance, an assignment is voidable in circumstances involving the statute of frauds, fraud in the inducement, lack of capacity as a minor, and mutual mistake.[64]

In the instant case, however, U.S. Bank has specifically argued that even if the assignment of the mortgage were to be found invalid, U.S. Bank could still enforce the Note and the DOT because it is the valid holder of the Note through its servicer, PNC.[65] The Court agrees, and thus,

---

[58] *Reinagel v. Deutsche Bank Nat. Trust Co.*, 735 F.3d 220, 225 (5th Cir. 2013); *Tri-Cities Const., Inc. v. Am. Nat. Ins. Co.*, 523 S.W.2d 426, 430 (Tex. Civ. App. 1975); *see also Glass v. Carpenter*, 330 S.W.2d 530, 537 (Tex. Civ. App. 1959) ("[an] obligor of a claim may defend the suit brought on any ground which renders the assignment of the claim void, but may not defend on any ground which renders the assignment voidable only, because the only interest or right which an obligor of a claim has in the instrument of assignment is to insure himself that he will not have to pay the same claim twice.").
[59] *Pagosa Oil & Gas, LLC. v. Marrs & Smith P'ship*, 323 S.W.3d 203, 211 (Tex. App.–El Paso 2010, pet. denied).
[60] *Id.*
[61] *Metcalf v. Deutsche Bank Nat. Trust Co.*, 3:11–CV–3014–D, 2012 WL 2399369, at *5 (N.D. Tex. June 26, 2012) (collecting cases).
[62] *Reinagel*, 735 F.3d at 225.
[63] *Calderon v. Bank of America, N.A.*, 941 F.Supp.2d 753, 765 (W.D. Tex. 2013).
[64] *Miller v. Homecomings Financial, LLC*, 881 F.Supp.2d 825, 831–32 (S.D. Tex. 2012).
[65] ECF No. 104, p. 8–9.

the Court finds that, in this instance, any frailty in the assignment of the DOT does not invalidate

the enforceability of the security instrument as against the Debtor, as borrower.

2.  Enforceability of the Note

Under Texas law, persons entitled to enforce an instrument, such as a promissory note,

include: "(i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has

the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce

the instrument pursuant to Section 3.309 or 3.418(d) [of the TEX. BUS. & COM. CODE]."[66] For U.S.

Bank to recover on the Note, Texas law requires that it establish the following: (1) the Note exists;

(2) the obligor signed the Note; (3) U.S. Bank is entitled to enforce the Note; and (4) a certain

balance is due and owing under the Note.[67] The Debtor challenges whether the third requirement

is satisfied, that is, whether U.S. Bank is entitled to enforce the Note. Under the Texas Property

Code, a party has standing to initiate a non-judicial foreclosure sale if the party is a mortgagee.[68]

A mortgagee in Texas includes the holder or owner of a note secured by the security

instrument such as a deed of trust, based on the common law maxim that "the mortgage follows

the note."[69] U.S. Bank maintains that it is a holder of the Note and therefore legally entitled to

enforce the mortgage. A holder is defined as "the person in possession of a negotiable instrument

that is payable either to bearer or to an identified person that is the person in possession."[70] A

person can become the holder of an instrument "made payable to an identified person" by a

"transfer of possession of the instrument and its indorsement by the holder."[71] For the indorsement

---

[66] TEX. BUS. & COM. CODE § 3.301.
[67] *SGK Properties, L.L.C. v. U.S. Bank National Association for Lehman Brothers Small Balance Mortgage Pass-Through Certificates, Series 2007-3*, 881 F.3d 922, 941 (5th Cir. 2018).
[68] TEX. PROP. CODE §§ 51.002, 51.0025.
[69] *See SGK Properties*, 881 F.3d at 941.
[70] TEX. BUS. & COM. CODE § 1.201(b)(21)(A).
[71] TEX. BUS. & COM. CODE § 3.201(b).

to be legally acceptable, it "must be written by or on behalf of the holder and on the instrument or on a paper so firmly affixed to it as to become part of it."[72]

PNC is currently in possession of the original Note.[73] The Note contains a special endorsement from National to U.S. Bank as trustee.[74] There is also an allonge to the Note acknowledging U.S. Bank as trustee.[75] While the Debtor contends in her Reply Brief that the allonge attached to the Note is invalid as it was executed by U.S. Bank, the Debtor notably does not challenge the validity of the special endorsement from National to U.S. Bank that is affixed to the Note itself.[76] U.S. Bank is therefore a valid holder of the Note. In light of the foregoing, the Court concludes that there is no genuine dispute as to any material fact regarding U.S. Bank's ability to enforce the Note and DOT.

### b. STATUTE OF LIMITATIONS.

The second and dispositive issue in this case is whether the enforcement of U.S. Bank's lien on the Sales Proceeds from the Property is barred by the statute of limitations. Under Texas law, a secured lender has four (4) years to foreclose on real property from the day the lender's cause of action to foreclose accrues.[77] If foreclosure does not occur within this limitations period, "the real property lien and a power of sale to enforce the … lien become void."[78] "If a note secured by a real property lien is accelerated pursuant to the terms of the note, then the date of accrual becomes the date the note was accelerated."[79] If the terms of the note specify that acceleration is

---

[72] *SGK Properties*, 881 F.3d at 941 (citing *Jernigan v. Bank One, Tex., N.A.*, 803 S.W.2d 774, 776 (Tex. App.–Houston [14th Dist.] 1991)).
[73] ECF No. 104-1, p. 5, ¶ 14.
[74] *See* ECF No. 100-1, p. 55–57.
[75] *See* Claim 5-1 Part 2, p. 10; *see also* ECF No. 104-1, p. 28.
[76] ECF No. 111, pp. 1-2; *see also* ECF No. 104-1, p. 25.
[77] TEX. CIV. PRAC. & REM. CODE § 16.035(a)–(b).
[78] *Id.* § 16.035(d).
[79] *Khan v. GBAK Properties, Inc.*, 371 S.W.3d 347, 353 (Tex. App.–Houston [1st Dist.] 2012, no pet.) (citing *Burney v. Citigroup Global Markets Realty Corp.*, 244 S.W.3d 900, 903 (Tex. App.–Dallas 2008, no pet.)).

optional "at the election of the note holder," the action only accrues when the holder exercises its

option to accelerate.[80] To be clear, "[t]he borrower's default does not automatically trigger the

limitations period where acceleration is optional at the election of the note holder."[81]

Upon the expiration of four years, if the lender has not foreclosed, the lender's lien is

typically unenforceable. [82] Two doctrines can alter this calculation: equitable tolling and

abandonment. The equitable tolling doctrine pauses the limitations clock when a party is prevented

from exercising its legal remedy by the pendency of legal proceedings.[83] This time will not be

counted against that party in determining whether limitations have barred its right to legal

remedy.[84]

Further, if foreclosure was triggered by accelerating a note, acceleration can be

abandoned.[85] "If acceleration is abandoned before the limitations period expires, the note's

original maturity date is restored and the noteholder is no longer required to foreclose within four

years from the date of acceleration."[86] In other words, after the acceleration has been abandoned,

"the limitations period ceases to run and does not restart until the lender exercises its option to re-

accelerate."[87]

---

[80] *Id.* (citing *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001)).

[81] *Wheeler v. U.S. Bank Nat'l Ass'n*, No. H-14-0874, 2016 WL 554846, at *4 (S.D. Tex. Feb. 10, 2016) (citing *Holy Cross*, 44 S.W.3d at 566).

[82] TEX. CIV. PRAC. & REM. CODE § 16.035(d).

[83] *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154, 157 (Tex. 1991) (quoting *Walker v. Hanes*, 570 S.W.2d 534, 540 (Tex. Civ. App.–Corpus Christi 1978, writ ref'd n.r.e.)).

[84] *Id.* (quoting *Walker*, 570 S.W.2d at 540).

[85] *Jorrie v. Bank of N.Y. Mellon Trust Co., N.A.*, 740 F. App'x 809, 813 (5th Cir. 2018).

[86] *Leonard v. Ocwen Loan Servicing, L.L.C.*, 616 F. App'x 677, 679 (5th Cir. 2015) ("*Leonard II*") (citing *Khan*, 371 S.W.3d at 353); *Clawson v. GMAC Mortg., LLC*, No. 3:12-CV-00212, 2013 WL 1948128, at *2 (S.D. Tex. May 9, 2013)); *see also* TEX. CIV. PRAC. & REM. CODE § 16.038(a) ("If the maturity date of a series of notes or obligations or a note or obligation payable in installments is accelerated, and the accelerated maturity date is rescinded or waived in accordance with this section before the limitations period expires, the acceleration is deemed rescinded and waived and the note, obligation or series of notes or obligations shall be governed by Section 16.035 as if no acceleration had occurred.").

[87] *Rachal v. Select Portfolio Servicing, Inc.*, No. 4:17-CV-871-ALM-CAN, 2018 WL 5724455, at *3 (E.D. Tex. Oct. 5, 2018) (citation omitted), *report and recommendation adopted*, No. 4-17-CV-871, 2018 WL 6171793 (E.D. Tex. Nov. 21, 2018), *appeal dismissed*, No. 18-41184, 2019 WL 2612720 (5th Cir. Apr. 30, 2019); *see also Sims v. Round Point Mortg. Servicing Corp.*, 760 F. App'x 306, 310–11 (5th Cir. 2019) (citing *Boren v. United States Nat'l Bank*

    1.  <u>Abandonment</u>.

Abandonment of acceleration "resets" the statute of limitations for the foreclosure cause of action and restores the loan to its original maturity date.[88] There are several ways to abandon acceleration.[89] Under Texas law, "a lender may unilaterally abandon an acceleration and restart its four-year limitations period."[90] Fifth Circuit and Texas appellate courts have made clear that a formal notice of rescission is not the exclusive means for abandoning acceleration.[91] "In the absence of an express notice of rescission of acceleration, the lender may show abandonment by conduct."[92]

### A. *Effectiveness of Notices of Acceleration*

As an initial matter, the Debtor contends that TEX. PROP. CODE § 51.002(b)(3) requires that notices of acceleration comply with certain notice requirements.[93] The Court notes that § 51.002(b)(3) deals with notice requirements for a foreclosure sale and makes no mention of a notice of acceleration. According to the Debtor, each of the nine (9) acceleration notices that were sent to the Debtor were accompanied by a notice of foreclosure sale, and as such, the Debtor believes the requirements of 51.002(b)(3) effectively make the notices of acceleration invalid.[94]

---

*Ass'n*, 807 F.3d 99, 103–06 (5th Cir. 2015) (reasserting that an abandonment of acceleration results in "a reset of the statute of limitations under Texas law")).

[88] *See Leonard v. Ocwen Loan Servicing, LLC*, Civ. Action No. H-13-3019, 2014 WL 4161769 at *4 (S.D. Tex. Aug. 19, 2014) ("*Leonard I*") ("[I]f a noteholder abandons acceleration, he no longer must foreclose within four years from the date of acceleration.") (citations omitted); *aff'd, Leonard II*, 616 F. App'x 677 (5th Cir. 2015).

[89] *See, e.g., Jorrie*, 740 F. App'x at 813 (discussing the multiple ways that a secured lender might abandon its acceleration); *see also Boren*, 807 F.3d at 104 (quoting *Khan*, 371 S.W.3d at 353).

[90] *Hollenshead v. Bank of America, N.A.*, No. 4:18-CV-724, 2020 WL 4615096, at *12 (E.D. Tex. May 19, 2020), *report and recommendation adopted*, No. 4:18-CV-724, 2020 WL 3496335 (E.D. Tex. June 29, 2020) (quoting *Leonard II*, 616 F. App'x at 680 (5th Cir. 2015)).

[91] *Boren*, 807 F.3d at 106 (holding that while sending a notice of rescission is a "best practice" for a lender seeking to effectuate its abandonment, it does not preclude other methods by which a lender may abandon or waive its acceleration of the debt); *Hollenshead*, 2020 WL 4615096, at *12 ("a formal notice of rescission is not the exclusive means for abandoning acceleration").

[92] *Hollenshead*, 2020 WL 4615096, at *12 (quoting *Bracken v. Wells Fargo Bank, N.A.*, No. 05-16-01334-CV, 2018 WL 1026268, at *3 (Tex. App.–Dallas Feb. 23, 2018, pet. denied) (mem. op.), *reh'g denied* (Apr. 12, 2018)).

[93] ECF No. 99, p. 10.

[94] ECF No. 105, pp. 5–6.

The Debtor cites no authority for this proposition. Texas courts have held that there are only two requirements for an acceleration to be effective, the holder of the note must send (1) a notice of intent to accelerate, and (2) a notice of acceleration, and that both notices must be "clear and unequivocal."[95] Considering the foregoing, the Court finds that the notices of acceleration sent by U.S. Bank are not ineffective simply because they do not comply with the requirements of TEX. PROP. CODE § 51.002(b)(3).

### B. 2010 Acceleration

On March 4, 2010, PNC sent the 2010 Acceleration.[96] On April 26, 2010, the Debtor and McKenzie executed a Loan Modification Agreement with PNC.[97] Federal district courts in Texas have repeatedly found that entry into a loan modification agreement constitutes abandonment of acceleration.[98] The Court need not determine, in the instant case, whether the Loan Modification Agreement between PNC, the Debtor, and McKenzie constituted an abandonment of the 2010 Acceleration because in the Amended Objection to Claim, the Debtor abandoned her arguments with regard to the 2010 Acceleration.[99] Therefore, the Court finds that the 2010 Acceleration is not at issue in the instant case.

### C. 2014 Acceleration

The Parties do not dispute the fact that U.S. Bank again accelerated the Loan by virtue of the 2014 Acceleration on September 26, 2014. The Debtor alleges that U.S. Bank never abandoned

---

[95] *Boren*, 807 F.3d at 104.

[96] *See* ECF No. 98, p. 2; *see also* ECF No. 99, p. 6.

[97] *See, e.g.,* ECF No. 98, p.2, ¶ 7; *see also* ECF No. 100-1, p. 48–54.

[98] *See Guillen v. Countrywide Home Loans, Inc.*, Civ. Action No. H–15–849, 2015 WL 4393155, at *2 (S.D. Tex. July 15, 2015) (acceleration was abandoned when parties entered into loan modification agreement); *Miceli v. The Bank of New York Mellon*, No. 1:13–CV–1032–DAE, 2015 WL 4164853, at *3 (W.D. Tex. July 9, 2015) (plaintiffs' execution of loan modification agreement, and payments thereunder, constituted abandonment of prior acceleration); *see also Snowden v. Deutsche Bank Nat'l Trust Co.*, Civ. Action No. H–14–2963, 2015 WL 5123436, at *3 (S.D. Tex. Aug. 31, 2015) (where borrower admits he executed loan modification agreement, whether agreement was enforceable not dispositive of whether agreement constituted abandonment of acceleration).

[99] *See, e.g.*, ECF No. 91; *see also* ECF No. 105, p. 3, ¶ 6.

14

its 2014 Acceleration of the loan.[100] On the contrary, U.S. Bank argues that it abandoned the 2014

Acceleration through multiple unilateral actions,[101] and further that the Debtor's Chapter 11 Plan

functioned to rescind the acceleration by allowing the Debtor 60 months to cure the arrearage.[102]

However, the Court need not decide whether U.S. Bank's aforementioned conduct demonstrates

abandonment nor determine whether the Chapter 11 Plan functioned to rescind the 2014

Acceleration because, even if the 2014 acceleration was not abandoned, the statute of limitations

on U.S. Bank's cause of action for foreclosure was tolled by the pendency of the Debtor's two

prior bankruptcy cases and thus has not expired.

### 2. The Equitable Tolling Doctrine.

"It is a well-established equitable principle of Texas law that, where 'a person is prevented

from exercising his legal remedy by the pendency of legal proceedings, the time during which he

is thus prevented should not be counted against him in determining whether limitations have barred

his right.'"[103] It is just as well-established that Texas common law, working in conjunction with

11 U.S.C. § 108, tolls the statute of limitations set forth in TEX. CIV. PRAC. & REM. CODE §

16.035(b) during the pendency of a bankruptcy proceeding due to the imposition of the automatic

stay.[104]

---

[100] ECF No. 99, p. 11.

[101] *See* ECF No. 98, p. 18 ("The 2018 Acceleration was an abandonment of the 2014 Acceleration."); *see also* ECF No. 98, p. 18 ("The 2018 NOD was an abandonment of the 2014 Acceleration."); *see also* ECF No. 98, p. 22 ("Numerous monthly statements sent by U.S. Bank demanding less than the total accelerated amount effected an abandonment of the 2014 Acceleration.").

[102] ECF No. 98, p. 16.

[103] *Reddick v. Deutsche Bank Nat'l Tr. Co.*, No. 3:16-CV-1997-D, 2017 WL 6343542, at *4 (N.D. Tex. Dec. 12, 2017) (quoting *Hughes*, 821 S.W.2d at 157).

[104] *See, e.g. Rose v. Select Portfolio Servicing, Inc.*, 945 F.3d 226, 229 (5th Cir. 2019) (citing *HSBC Bank USA N.A., v. Crum*, 907 F.3d 199, 204–05 (5th Cir. 2018) (Texas limitations periods are tolled when automatic stay is in place, including the date of filing and the date the stay is lifted.); *see also Peterson v. Texas Commerce Bank-Austin, Nat. Ass'n*, 844 S.W.2d 291, 295 (Tex. App.–Austin 1992, no pet.) ("After the automatic stay has been lifted, a claimant should benefit from the tolling of the statute of limitations for the period the stay was imposed and be permitted to bring suit during the remaining period granted by the statute of limitations.").

Neither party disputes that U.S. Bank's claim accrued when it accelerated the loan on September 26, 2014.[105] The Debtor argues that U.S. Bank has not successfully abandoned its 2014 Acceleration and that the statute of limitations has since expired, causing the lien to become void.[106] U.S. Bank primarily contends that the statute of limitations was tolled during the pendency of Debtor's 2014 and 2018 Bankruptcy cases because it could not foreclose while the automatic stay was in place.[107] The Debtor maintains that because U.S. Bank could have pursued a legal remedy against McKenzie – whose interest in the property was not protected by the automatic stay after the 2014 Bankruptcy was converted to Chapter 11 – the statute of limitations was not tolled after the conversion, and the lien has since expired.[108] For the reasons that follow, the Court finds the statute of limitations has not run.

### A. The Automatic Stay - Property of the Estate.

Section 362(a) of the Bankruptcy Code defines the scope of the automatic stay which is implemented on commencement of a bankruptcy proceeding. "[The] automatic stay is designed to ensure the orderly distribution of assets by temporarily protecting the property of the debtor's estate from the reach of creditors."[109] Furthermore, "the automatic stay is designed to protect creditors as well as debtors,"[110] in that it allows for the equitable disbursement of estate property among creditors.[111] Property of the bankruptcy estate is defined as "all legal or equitable interests

---

[105] *See* ECF No. 98, p. 7; *see also* ECF No. 99, p. 9.
[106] *See* ECF No. 99, p. 9, ¶¶ 28–29.
[107] *See* ECF No. 98, p. 13–16.
[108] *See* ECF No. 99, p. 15–16.
[109] *In re Chesnut*, 422 F.3d 298, 300 (5th Cir. 2005).
[110] *Id*, at 301; *see also In re Stembridge*, 394 F.3d 383, 387 (5th Cir. 2004) (explaining that the automatic stay provides much needed "breathing room" for a debtor and the bankruptcy court to institute an organized repayment plan).
[111] *See Reliant Energy Servs., Inc. v. Enron Can. Corp.*, 349 F.3d 816, 825 (5th Cir. 2003) ("the purposes of the bankruptcy stay under 11 U.S.C. § 362 … [include] 'furthering equity of distribution among the creditors by forestalling a race to the courthouse.'") (quoting *GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir. 1985)).

16

of the debtor in property as of the commencement of the case."[112] Notably, too, "the automatic stay has broad application,"[113] which the Fifth Circuit has interpreted as evidence that Congress intended courts to presume protection of even arguable property in the face of uncertainty or ambiguity.[114]

As the Fifth Circuit aptly noted in *Rose v. Select Portfolio*, section 362(a) "operates as a stay of certain actions in three categories: against the debtor, the debtor's property, and property of the bankruptcy estate."[115] In *Rose v. Select Portfolio*, a debtor brought an action in state court against the debtor's loan servicer and mortgagee, seeking a ruling that the statute of limitations had expired on the mortgagee's power to foreclose on the debtor's home.[116] Specifically, the debtor argued that because the automatic stay had been lifted with respect to the debtor under 11 U.S.C. § 362(c)(3)(A) in the debtor's prior bankruptcy case, the mortgagee had not been barred from exercising its foreclosure remedy and that the limitations period had since expired. The Fifth Circuit held that the automatic stay operates separately with respect to the debtor and the property of the bankruptcy estate.[117] As such, the Fifth Circuit concluded that the property at issue had been protected as "property of the estate" throughout the course of the bankruptcy proceeding.[118] Having determined such, the court further found that the mortgagee had been prevented from exercising its foreclosure remedy throughout the pendency of the bankruptcy case and that the statute of limitations was tolled during that time period.[119]

---

[112] 11 U.S.C. § 541(a)(1).

[113] *See Chesnut*, 422 F.3d at 303; *see also In re Krystal Cadillac Oldsmobile GMC Truck, Inc.*, 142 F.3d 631, 637 (3d Cir. 1998); 3 Collier on Bankruptcy ¶ 362.03 (Richard Levin & Henry J. Sommer eds., 16th ed. 2022) (noting the automatic stay's "extremely broad" scope).

[114] *See Chesnut*, 422 F.3d at 303.

[115] *Rose v. Select Portfolio Servicing, Inc.*, 945 F.3d at 230 (5th Cir. 2019) (quoting *In re Smith*, 910 F.3d 576, 580 (1st Cir. 2019) (internal quotation marks omitted)).

[116] *Id.*

[117] *Id.* at 230–31.

[118] *Id.* at 231 ("the stay with respect to the property… lasted the duration of the bankruptcy proceeding.").

[119] *Id.*

In the instant case, similarly to that in *Rose v. Select Portfolio*, the Debtor argues <u>without authority</u> that the fact that McKenzie was not protected by the automatic stay has some bearing on whether the statute of limitations expired.[120] However, it should be noted that McKenzie himself never took a position as to whether the automatic stay should apply to the property during this period, despite being an active participant in each bankruptcy case the Debtor has filed. Moreover, *Rose v. Select Portfolio* is unequivocal. The Property at issue was indisputably protected as property of the estate throughout Debtors' prior bankruptcy cases.[121]

The voluntary petition commencing the 2014 Bankruptcy was filed on November 3, 2014.[122] The Property was no longer protected as property of the estate under the 2014 Bankruptcy as of June 30, 2017,[123] when U.S. Bank was no longer enjoined from foreclosing on the property.[124] The petition commencing the 2018 Bankruptcy was filed on September 3, 2018.[125] On June 27, 2019, the court entered an Order dismissing the 2018 Bankruptcy, thereby lifting the automatic stay.[126] On November 1, 2021, the Debtor filed her voluntary petition commencing the instant bankruptcy case.[127]

---

[120] *See* ECF No. 99, p. 15.

[121] The Property is listed in Debtor's 2014 Bankruptcy petition, schedules, disclosure statement, Chapter 11 Plan, and the order confirming the plan; the Property is also listed in Debtor's 2018 Bankruptcy petition and schedules. *See, e.g.,* Bankruptcy Case No. 14-35340-bjh, ECF Nos. 1, 11, 109, 121–122 and 130; *see also* Bankruptcy Case No. 18-32918-hdh, ECF Nos. 1 and 15.

[122] *See* Bankruptcy Case No. 14-35340-bjh, ECF No. 1.

[123] The Chapter 11 Plan defines "Effective Date" as "occurring within thirty [30] days of the first Business Day on which the Confirmation Order becomes a Final Order." *See* ECF No. 98-13, p. 4. The Parties agree that the "Effective Date" of the Chapter 11 Plan could have been any date from June 8, 2017 through July 7, 2017. *See, e.g.* ECF No. 98, pp. 14–15; *see also* ECF No. 99, p. 15, n. 31. The Court notes that in the Debtor's calculation of the days tolled by the automatic stay, the Debtor cites to 11 U.S.C. § 108(c) for the proposition that the statute of limitations shall "not expire until … 30 days after notice of the termination or expiration of the stay," thereby *adding* an additional 30 days after the stay was lifted to the calculation of the time in which the statute of limitations was tolled. *See* ECF No. 99, p. 15. Given that the Court finds that the statute of limitations never expired with regard to the 2014 Acceleration (by a substantial margin), the Court need not address whether § 108(c) would give U.S. Bank *more* time.

[124] Though neither party mentions this in their respective MSJs, the Court notes that the Chapter 11 Plan specifically enjoined U.S. Bank from exercising its rights against the Property beyond the effective date, until June 30, 2017. *See* ECF No. 98-13, p. 7.

[125] *See* Bankruptcy Case No. 18-32918-hdh, ECF No. 1.

[126] *See* Bankruptcy Case No. 18-32918-hdh, ECF No. 48.

[127] *See* ECF No. 1.

Between the 2014 Acceleration, on September 26, 2014, and the day before the instant bankruptcy case, a total of 2,587 days elapsed. The Property was subject to the protection of the automatic stay for a total of 1,264 days, and the statute of limitations was tolled thereby for at least the same amount of time.[128] Therefore, only 1,323 (2,587 – 1,264) days have elapsed where U.S. Bank was free to exercise its foreclosure remedy with respect to the 2014 Acceleration. Four years is 1,461 days, which is well in excess of those 1,323 days.[129] Accordingly, U.S. Bank's Claim No. 5-1 is not barred by the statute of limitations. Considering the foregoing, the Court finds that there is no issue of material fact as to whether the statute of limitations was tolled by the Debtor's two prior bankruptcy cases. Further, the Court concludes that there is no issue of material fact as to whether U.S. Bank's Claim No. 5-1 is barred by the statute of limitations, and the Court therefore determines that U.S. Bank's Claim No. 5-1 should be allowed in full.

### c.  INSTALLMENT CONTRACT THEORY

If the Court does not find the entire lien to be void as a matter of law, in the alternative, the Debtor requests that the Court consider an installment contract theory. Citing to TEX. CIV. PRAC. & REM. CODE § 16.035(e), the Debtor contends that the four-year limitations period on a note payable in installments, which is secured by a real property lien, does not begin to run until the maturity date of the last note, obligation, or installment.[130] The Debtor cites an inapposite Texas state appellate court decision, *Beesley v. Hydrocarbon Separation, Inc.*, for the proposition that "recovery of any payment more than four years overdue is barred."[131] On reviewing *Beesley*, the Court notes that the state appellate court interprets a different statute of limitations entirely – that

---

[128] The automatic stay was in place for 968 days between November 3, 2014 and June 30, 2017, and an additional 296 days between September 3, 2018 and June 27, 2019.
[129] Three (3) years of 365 days and one (1) year of 366 days.
[130] *See* ECF No. 99, p. 17, ¶ 51.
[131] *Id.* (quoting *Beesley v. Hydrocarbon Separation, Inc.*, 358 S.W.3d 415, 425 (Tex. App.–Dallas 2012, no pet.).

imposed for a breach of contract claim by TEX. CIV. PRAC. & REM. CODE § 16.051. Further, none

of the cases cited by the Debtor address the statute of limitations at issue in this case or involves

real property liens at all.[132]

Each of the cases the Debtor relies upon cite to the fact that the contract at issue was an

installment contract, and the courts' reasoning for barring recovery of payments outside of the

limitations period had to do with the fact that a party might wait to bring its suit to maximize the

recoverable damages.[133] Because of that danger, courts in Texas have held that an installment

agreement is breached each time a payment is missed.[134] In doing so, Texas courts limit a cause

of action for the breach of a contract payable in installments to those payments due within the four-

year statute of limitations provided in TEX. CIV. PRAC. & REM. CODE § 16.004, but bar any

recovery beyond that point.

As the Court has mentioned above, under the statute of limitations applicable to the instant

cause of action, TEX. CIV. PRAC. & REM. CODE § 16.035(b), a secured lender has four years to

foreclose on real property from the day the lender's foreclosure cause of action accrues.[135] In *Holy*

*Cross Church of God in Christ v. Wolf*, the Texas Supreme Court specifically held that the general

rule applicable to limitations in installment contracts does not apply to § 16.035(b), but rather that

---

[132] *See Beesley*, 358 S.W.3d at 425 (ruling on breach of employment contract claim); *Trelltex, Inc. v. Intecx, L.L.C.*, 494 S.W.3d 781, 786 (Tex. App.–Houston [14th Dist.] 2016, no pet.) (breach of contract actions in "continuing contract" barred by limitations arising on each payment); *Spin Doctor Golf, Inc. v. Paymentech, L.P.*, 296 S.W.3d 354, 362 (Tex. App.–Dallas 2009, pet. denied) (ruling on TEX. CIV. PRAC. & REM. CODE § 16.004 limitations dealing with contract actions); *Davis Apparel v. Gale-Sobel, a Div. of Angelica Corp.*, 117 S.W.3d 15, 18 (Tex. App.–Eastland 2003 no pet.) (where parties treated employment contract like installment contract, only payments due within four year limitations period were recoverable); *Hollander v. Capon*, 853 S.W.2d 723, 726 (Tex. App.–Houston [1st Dist.] 1993, writ denied) (ruling on limitations imposed by TEX. CIV. PRAC. & REM. CODE § 16.004 for cause of action arising from breach of installment contract); *Hart v. Int'l Tel. & Tel. Corp.*, 546 S.W.2d 660, 662 (Tex. App.–San Antonio 1997, writ ref'd n.r.e.) (ruling that causes of action arising from unpaid commissions which were to be paid on a quarterly basis under employment contract were barred by two-year statute of limitations).

[133] *See, e.g.*, *Beesley*, 358 S.W.3d at 426 ("To maximize the recoverable damages, the employee might wait as long as possible to bring suit.")

[134] *Hollander v. Capon*, 853 S.W.2d 723, 726 (Tex. App.–Houston [1st Dist.] 1993, writ denied).

[135] TEX. CIV. PRAC. & REM. CODE § 16.035 (b).

§ 16.035(e) controls.[136] Other Texas state appellate courts have continued to define the rule by saying, "[i]f a note secured by a real property lien is accelerated pursuant to the terms of the note, then the date of accrual becomes the date the note was accelerated."[137] As the Texas Supreme Court further stated in *Holy Cross,* if the terms of the note specify that acceleration is optional "at the election of the note holder," like in the instant case, the action only accrues when the holder exercises its option to accelerate.[138] To reiterate, the rule in Texas with regard to real property liens is that "[t]he borrower's default does not automatically trigger the limitations period where acceleration is optional at the election of the note holder."[139]

The Court finds the cases cited by the Debtor with regard to the statute of limitations on installment contracts to be inapposite to the instant case, as none of them deal with mortgage loans or liens secured by real property. Considering the foregoing, and the Supreme Court of Texas' clear direction in *Holy Cross*, the Court hereby denies the declaratory relief sought by the Debtor and determines there is no genuine issue of material fact as to whether U.S. Bank can enforce its lien on the entirety of their Claim No. 5-1. Accordingly, U.S. Bank's lien shall attach to the Sales Proceeds.

## V.    **CONCLUSION**.

For the foregoing reasons, the Court hereby GRANTS U.S. Bank's Motion for Summary Judgment [ECF No. 98] and DENIES Debtor's Motion for Summary Judgment [ECF No. 99].

**IT IS SO ORDERED.**

**### END OF MEMORANDUM OPINION AND ORDER ###**

---

[136] *See Holy Cross*, 44 S.W.3d at 566 ("Section 16.035 modifies the general rule that a claim accrues and limitations begins to run on each installment when it becomes due. If a note or deed of trust secured by real property contains an optional acceleration clause, default does not *ipso facto* start limitations running on the note.").
[137] *Khan*, 371 S.W.3d at 353.
[138] *Id.* (citing *Holy Cross*, 44 S.W.3d at 566).
[139] *Wheeler*, 2016 WL 554846, at *4 (citing *Holy Cross*, 44 S.W.3d at 566).